UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

TIMOTHY ROBERT SMITH,

        Plaintiff,                        Case No. 2:15-CV-88

v.                                         HON. TIMOTHY P. GREELEY

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## OPINION & ORDER

        Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act on April 10, 2012.  ECF No. 7-2 at 38; PageID.68.  Plaintiff alleges that he became disabled on April 1, 2012.  ECF No. 7-2 at 38; PageID.68.  Plaintiff's application was denied, and denied again upon reconsideration.  On October 4, 2012, Plaintiff filed a written request for an administrative hearing before an Administrative Law Judge (ALJ).  ECF No. 7-2 at 38.  The ALJ held a video hearing on January 14, 2014.  ECF No. 7-2 at 38; PageID.68.  At the hearing, Plaintiff was represented by counsel.  ECF No. 7-2 at 38; PageID.68.  Testifying at the hearing were Plaintiff and vocational expert William Dingess.  ECF No. 7-2 at 38; PageID.68.  In a decision issued February 21, 2014, the ALJ denied Plaintiff's claim for benefits.  ECF No. 7-2 at 38-51; PageID.68-81. Plaintiff appealed to the Appeals Council, which denied his request for review on May 7, 2015.  ECF No. 7-2 at 2; PageID.32.  Plaintiff then filed this action on July 6, 2015.[1]  ECF No. 1.

---

[1] Both parties consented to proceed before a Magistrate Judge on October 9, 2015.  ECF No. 9.

Plaintiff suffers from asthma, diabetes, obesity, an affective disorder, and anxiety. ECF No. 7-2 at 40; PageID.70.  He testified that he retired from his twenty-five year position as a correction officer on April 1, 2012, and he has not worked since retiring.  ECF No. 7-2 at 62; PageID.92.  He stated that he can drive, ride a motorcycle at least one hundred miles at a time, go hunting four times a year with his grandson, handle his own money, work in his shed, play cards, snowblow driveways, cut roof shingles, and travel to Florida for a month in the winter.  ECF No. 7-2 at 65-66, 69-70, 73, 75, 78-80; PageID.95-96, 99-100, 103, 105, 108-110.  He testified that he has not slept more than three hours a night since retiring.  ECF No. 7-2 at 67; PageID.97.  In addition, Plaintiff stated that he sees a therapist once a week.  ECF No. 7-2 at 73; PageID.103.

Vocational expert William Dingess testified at the hearing and was asked to evaluate Plaintiff's ability to perform his past relevant work based on several different hypotheticals.  The first hypothetical asked whether a person of Plaintiff's age, education, and skills that had the following limitations would be able to perform Plaintiff's past work as a corrections officer, or any other jobs at a medium level: no more than occasional climbing of ramps, stairs, ladders, ropes or scaffolds; frequent stooping, crouching, kneeling, or crawling; avoid concentrated exposure to extreme cold, heat, humidity; moderate exposure to irritants like fumes, odors, dusts, and gasses; simple, routine, or repetitive work; no fast-paced production requirements; only simple work related decisions; no more than occasional work place changes; and occasional interaction with the public, supervisors, and co-workers.  ECF No. 7-2 at 82, 84; PageID.112, 114.  Mr. Dingess stated that this hypothetical person would not be able to perform Plaintiff's past work as a correctional officer, but would be able to do the following unskilled jobs: industrial cleaner (1.2 million nationally), hand packer (211,000 nationally), assembler

(234,000 nationally), and store clerk (593,000 nationally). ECF No. 7-2 at 83; PageID.113. The ALJ then asked whether a person with the limitation of no significant interaction with the public and occasional interaction with others (rather than occasional interaction with the public), would have any jobs available to him. ECF No. 7-2 at 84; PageID.114. Mr. Dingess stated that the same jobs would be available to this person as the jobs available under the first hypothetical. ECF No. 7-2 at 84; PageID.114. In the next hypothetical, the ALJ asked whether a combination of medical conditions and mental impairments that cause a person to be unable to engage in sustained activity on a regular basis for eight hours a day, five days a week, for forty hours a week would have competitive work available to him. ECF No. 7-2 at 84; PageID.114. Mr. Dingess indicated that no competitive work would be available for a person with these limitations. ECF No. 7-2 at 84; PageID.114. The ALJ then asked whether a person that engages in more than two unexcused absences a month, two fifteen minute breaks throughout the day, and a half hour meal break each day would have any competitive work available to him. ECF No. 7-2 at 84-85; PageID.114-115. Mr. Dingess indicated that this type of person would not have any jobs available to him. ECF No. 7-2 at 85; PageID.115.

   Plaintiff's attorney then asked Mr. Dingess whether a person that had angry outbursts at coworkers or supervisors would have employment possibilities. ECF No. 7-2 at 85-86; PageID.115-116. Mr. Dingess said there would be "no ability to maintain employment on that basis." ECF No. 7-2 at 86; PageID.116. Plaintiff's attorney also asked whether an individual who needed to be reminded to complete tasks regularly (i.e., twice an hour during the work day) would have competitive employment available to him. ECF No. 7-2 at 86; PageID.116. Mr. Dingess indicated that this situation is unlikely with simple, unskilled,

repetitive jobs.  ECF No. 7-2 at 86; PageID.116.  Finally, Plaintiff's attorney inquired if Plaintiff had transferrable skills to a light or sedentary RFC.  ECF No. 7-2 at 86; PageID.116.  Mr. Dingess stated that he did not.  ECF No. 7-2 at 86; PageID.116.

The ALJ determined that Plaintiff suffers from asthma, diabetes mellitus, obesity, affective disorder, and anxiety.  ECF No. 7-2 at 40; PageID.70.  Based on this condition and the ALJ's determination of Plaintiff's physical capabilities, the ALJ concluded that Plaintiff could perform work as an industrial cleaner, hand packer, assembler, and store clerk.  ECF No. 7-2 at 50; PageID.80.

Plaintiff filed an appeal on July 6, 2015 (ECF No. 1), alleging that the ALJ committed reversible errors. ECF No. 10.  Defendant Commissioner of Social Security filed a response on December 8, 2015.  ECF No. 11.  Plaintiff did not file a reply.  The matter is now ready for a decision.

"Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Winslow v. Comm'r of Soc. Sec.*, 566 Fed. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g). The findings of the ALJ are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991); *see also Miller v. Comm'r of Soc. Sec.*, No. 15-1405, 2016 WL 362423, at *4 (6th Cir. 2016) (noting more than a mere scintilla of evidence is needed, but less than a preponderance).  This Court is not permitted

to try the case *de novo*, nor resolve conflicts in the evidence and cannot decide questions of credibility. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (noting the ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion). This Court is required to examine the administrative record as a whole and affirm the Commissioner's decision if it is supported by substantial evidence, even if this Court would have decided the matter differently. *See Kinsella v. Schwikers*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (holding that the court must affirm a Commissioner even if substantial evidence would support the opposite conclusion).

The ALJ must employ a five-step sequential analysis to determine if Plaintiff is under a disability as defined by the Social Security Act. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If the ALJ determines Plaintiff is or is not disabled under a step, the analysis ceases and Plaintiff is declared as such. 20 C.F.R. § 404.1520(a). Steps four and five use the residual functional capacity assessment in evaluating the claim. *Id.*

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 1, 2012, the alleged onset date. ECF No. 7-2 at 40; PageID.70; *see* 20 C.F.R. § 404.1520(b). At step two, the ALJ determined Plaintiff has the following severe impairments: asthma, diabetes mellitus, obesity, affective disorder, and anxiety. ECF No. 7-2 at 40; PageID.70. At step three, the ALJ determined Plaintiff's impairments or a combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1. ECF No. 7-2 at 41. At step four, the ALJ determined

Plaintiff has the residual functional capacity (RFC) to perform medium work, as defined in 20 C.F.R. § 404.1567(d), with the additional limitations of: occasional climbing of ramps, stairs, ladders, ropes, or scaffolds; frequent stooping, crouching, kneeling, and crawling; avoid concentrated exposure to extreme cold, extreme heat and humidity; moderate exposure irritants such as fumes, odors, dusts, and gases; do work involving only simple, routine, and repetitive tasks; no fast paced production requirements; make simple, work-related decisions; occasional work place changes; and only occasional interaction with the public, supervisors, or co-workers. ECF No. 7-2 at 43; PageID.73.  At step five, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Plaintiff can perform, such as: an industrial cleaner (1.2 million jobs nationally), a hand packer (211,000 nationally), an assembler (234,000 nationally), and a stock clerk (400,000 nationally).  ECF No. 7-2 at 50; PageID.80.  Therefore, the ALJ held that Plaintiff was not disabled during the time period from his alleged onset date through his date last insured.  ECF No. 7-2 at 51; PageID.81.

Plaintiff's brief alleges that the ALJ committed reversible error by (1) failing to properly weigh the medical opinion evidence of record and (2) failing to properly evaluate Plaintiff's credibility.  ECF No. 10 at 9-17; PageID.676-684.  Upon review of the evidence of record, the Court affirms the ALJ's decision.

Plaintiff first argues that the ALJ erred in affording Plaintiff's treating psychologist (Dr. Lamb) little weight for several reasons.  ECF No. 10 at 10-14; PageID.677-681. Specifically, Plaintiff claims that the ALJ erred by not affording great weight to Dr. Lamb's Psychiatric/Psychological Impairment Questionnaire, his treatment notes, IQ and psychomotor abnormality findings, and Plaintiff's activities of daily living.  ECF No. 10 at 10; PageID.677.

Plaintiff claims that instead of relying on Dr. Lamb's opinions, the ALJ improperly relied on the opinions of examining psychologist Dr. Ransom, treating psychiatrist Dr. Wilcox, and the state agency psychologist Dr. Smith.  ECF No. 10 at 10; PageID.677.

An ALJ affords a treating physician's opinion controlling weight when the evidence and findings are consistent with the other substantial evidence on record.  20 C.F.R. § 1527(c)(2); *see Miller*, 2016 WL 362423, at *8 (noting the weight assigned must account for the (in)consistency "among the examining sources and the record as a whole" and also consider the factors under 20 C.F.R. § 1527).  Only when the ALJ does not afford great weight to a treating source's opinion is the ALJ required to apply and conduct an analysis of the factors under (c)(2)(i) and (c)(2)(ii), and (c)(3) through (c)(6).  *Id.*  Moreover, an ALJ is not required to rely on medical opinions concluding that a person is, or is not, disabled since that is an issue reserved to the Commissioner.  20 C.F.R. § 1527(d).

"As a procedural requirement, the ALJ must also provide 'good reasons' for discounting the weight to be given to a treating source's opinion." *Edwards v. Comm'r of Soc. Sec.*, No. 15-3546, 2016 WL 231136, at *2 (6th Cir. Jan. 19, 2016) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013)).  These reasons must be supported by the evidence and be noted with specificity "to ensure that the rule is applied and to permit meaningful review." *Id.* (citing *Gayheart*, 710 F.3d at 376).

The ALJ thoroughly evaluated each of Dr. Lamb's medical opinions of Plaintiff, and afforded little weight to the opinions that were inconsistent with the objective medical evidence of record.  The ALJ concluded the following opinions of Dr. Lamb should be afforded little weight in assessing Plaintiff's impairments:

In December 2012, Dr. Lamb offered a diagnosis of major depressive disorder, recurrent, severe, without psychotic features; PTSD; and generalized anxiety disorder. A GAF of 46 was assessed, indicating the presence of serious functional difficulty with serious symptoms. Dr. Lamb indicated he encouraged the claimant to engage in social interaction and seek emotional support. Dr. Lamb opined that the "patient is unable to summon sufficient mental acuity for even part time physical work and, he is not expected to be able to work even part time in the foreseeable future." Dr. Lamb stressed that the claimant was abstinent from alcohol for three months, stating that his "incapacity to work exists with or without alcohol use." Little weight is accorded to the opinion provided by Dr. Lamb, which is not consistent with the myriad of daily activities reported by the claimant at this time. Furthermore, the ultimate issue of disability is a medical-vocational determination reserved for the Commissioner (SSR 96-5p).

Also in December 2012, Dr. Lamb completed a psychological impairment questionnaire, which appears to have been provided by the claimant's representative. This includes multiple symptoms to be checked off if present. The diagnosis remained consistent, as noted above, along with the assessed GAF rating. Dr. Lamb again indicated that the claimant's prognosis regarding his ability to return to work was poor. As the claimant had already retired from his position as a corrections officer, it is unclear as to what work the claimant would be returning. The symptoms checked off by Dr. Lamb included poor memory, sleep disturbance, mood disturbance and emotional liability, which are supported by the medical record. The next item checked off, "loss of intellectual ability of 15 IQ points or more," is not. When Dr. Ransom did IQ testing of the claimant in 2011, there was no indication that the results were out of the expected range. There is no indication that Dr. Lamb engaged in additional IQ testing which would support a measurement of a decrease in 15 IQ points.

. . . .

Dr. Lamb indicated in the questionnaire that the claimant would have "marked" limitations regarding the ability to make work related decisions, complete a workweek without interruptions from psychologically based symptoms, respond appropriately to supervisors, get along with co-workers and maintain socially appropriate behavior. Marked limitations regarding the ability to set realistic goals or make plans independently, as well as being aware of

>normal hazards and to take appropriate precautions in the work place were also noted. Dr. Lamb indicated that the claimant would miss more than three days of work each month. Little weight is accorded to the responses in this questionnaire as to the severity of limitations as perceived by Dr. Lamb, are not supported by the medical record, or Dr. Lamb's own treatment notes. Although Dr. Lamb is a treating source, treating source opinions are to be given controlling weight *if* well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence (20 CFR §404.1527(d)). In this instance, multiple inconsistencies are noted.
>
>. . . .
>
>In December 2013, Dr. Lamb completed another pre-printed questionnaire, which appears to have been provided by the claimant's representative. This form focuses on the possible connection between alcohol or drug abuse and the claimant's perceived disability. Dr. Lamb put a check mark by the statement, "my patient is currently not using drugs and/or alcohol and remains disabled." Dr. Lamb elaborated further that the claimant "went from occasional use (2 times a year) to abstaining totally." While the undersigned agrees there is no indication that substance abuse is material to this decision, little weight is given to the portion of the opinion which states the claimant "remains disabled." As noted above, the ultimate issue of disability is a medical-vocational determination reserved for the Commissioner (SSR 96-5p). It is of note that if the claimant reported to Dr. Lamb that his prior use of alcohol was limited to several drinks a year, it is inconsistent with his self-report written in April 2012 in which he indicated that he went to bars when feeling lonely or depressed.

ECF No. 7-2 at 47- 48; PageID.77-78 (citations omitted and emphasis in original). Clearly, despite Plaintiff's allegations to the contrary, the ALJ provided several "good reasons" for affording little weight to Dr. Lamb's medical opinions. For example, the ALJ properly pointed out internal inconsistencies between Dr. Lamb's own medical opinions, and the reports of other physicians, contained in the record. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a while, the more weight we will give to that

opinion."); *see, e.g.,* ECF No. 7-7 at 143, PageID.442 (noting Dr. Lamb's note that "Patient is unable to summon sufficient mental acuity for even part time physical work, and, he is not expected to be able to work even part time in the foreseeable future."); *cf.* ECF No. 7-6 at 17-19, PageID.261-263 (noting Plaintiff's Function Report shows he has the mental ability to pay bills, count change, use a checkbook and savings account, go hunting, and play cards). In addition, the ALJ properly noted that he is not required to adopt Dr. Lamb's conclusions that Plaintiff is disabled since that is an issue reserved for the Commissioner. 20 C.F.R. § 404.1527(d).

Moreover, the ALJ also noted that Dr. Lamb's opinions were afforded little weight because they were inconsistent with Dr. Ransom's and Dr. Wilcox's medical opinions (which were consistent with each other and other objective medical evidence of record). For instance, Dr. Ransom's report of Plaintiff's psychological state in December of 2011 indicates that Plaintiff had a GAF score of 60, and had only moderate difficulty socially, occupationally, or in school. ECF No. 7-7 at 63-67; PageID.363-367. In addition, Dr. Wilcox's February 2012 report indicated that Plaintiff was generally normal mentally, aside from his depression, and that he had a GAF score of 60. ECF No. 7-7 at 68-70; PageID.368-370. These findings are starkly different than Dr. Lamb's conclusions that Plaintiff had "marked" mental limitations. ECF No. 7-7 at 147-49; PageID.447-449.

Finally, the ALJ properly relied on the state agency psychologist's findings (those of Barbara Jones Smith, Ph.D.) rather than the findings of Dr. Lamb, contrary to Plaintiff's assertions. "State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence." *Hoskins v. Comm'r of Soc. Sec.*, 106 Fed. App'x 412, 415 (6th Cir. 2004); *see also Rogers v. Comm'r of Soc. Sec.*, 486

F.3d 234, 245 n.4 (6th Cir. 2007) (quoting SSR 96-6P) ("In appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."). Because the ALJ has provided "good reasons" for discounting Dr. Lamb's opinion, he was not required to afford less weight to Dr. Smith's opinions as long as they were supported by the evidence of record. *See Helm v. Comm'r of Soc. Sec.*, 405 Fed. App'x 997, 1002 (6th Cir. 2011). In addition, even though Dr. Smith's opinion was rendered prior to some of Dr. Lamb's opinions, this does not invalidate the ALJ's reliance on her opinion. *See Butka v. Comm'r of Soc. Sec.*, Civil No. 08-13228, 2010 WL 6649889, at *3 (E.D. Mich. Feb. 16, 2010) (noting an ALJ may rely on a state agency physician's opinion, even when not based on a complete record, as long as the ALJ gave "some indication that he considered and rejected the later evidence."). As a result, the ALJ did not improperly rely on the opinion of the state agency psychologist when determining Plaintiff's mental capabilities.

Overall, in affording Dr. Lamb's opinions little weight, the ALJ properly relied on the evidence of record and provided "good reasons" for this determination. Consequently, Plaintiff's claim that the ALJ improperly afforded little weight to Dr. Lamb's opinion fails. *See Fry v. Comm'r of Soc. Sec.*, 476 Fed. App'x 73, 75 (6th Cir. 2012) ("[A]n ALJ is not bound by a treating physician's conclusory opinion that a claimant is unable to work, and may even discount the physician's opinion if there is substantial medical evidence to the contrary) (citations omitted).

Plaintiff's second claim is that the ALJ's unfavorable credibility determination of Plaintiff is not supported by substantial evidence. ECF No. 10 at 14-17; PageID.681-684. When an ALJ evaluates an individual's complaints of pain and disabling symptoms, the ALJ may

consider the credibility of the person. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* (citing *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). An ALJ's determination of a Plaintiff's credibility must be supported by substantial evidence. *Id.*; *Winslow*, 566 Fed. App'x at 422. Simply stating that Plaintiff has pain or other symptoms is not sufficient to establish that the individual is disabled. *Walters*, 127 F.3d at 531 (citing 20 C.F.R. § 404.1529(a)). The ALJ must assess an individual's pain by using a two prong test:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Id.* (referencing *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (quoting *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)); *see also* 20 C.F.R. § 404.1529(a). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531 (citing *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)). An ALJ can also consider an individual's ability to do household and social activities when assessing the credibility of a person's alleged pain and disabling symptoms. *Id.* at 532.

In determining Plaintiff's allegations of pain and disabling symptoms were not

credible, the ALJ identified several inconsistencies between Plaintiff's testimony and the evidence of record. The ALJ appropriately evaluated and considered Plaintiff's allegations of pain in his decision:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> . . . .
>
> The claimant's allegations of disabling symptoms is simply not credible. First, the treatment notes outlined above suggest moderate symptoms, and the opinions of his primary care physician Dr. Short, the evaluating psychologist, Dr. Ransom, and Dr. Wilcox are consistent with at most a moderate degree of impairment. Only his psychotherapist, Dr. Lamb, assessed his impairment as more severe. Further, the claimant's actual functioning as shown by his recent work history and activities of daily living, indicate that he is mentally and physically function[al] for work activity at the residual functional capacity stated above. Once again, he performed medium semi-skilled work activity as a corrections officer for years with the same basic impairments and symptoms he has experienced since his retirement.
>
> Moreover, the credibility of his assertions is undercut by his clear exaggeration of his limitations in his testimony. For example, the claimant testified that he stays in his trailer most of the time and "does not go anywhere or do anything anymore" except watch TV for 18 or 19 hours a day. However, upon specific questioning by the undersigned based on evidence from the record, he admitted he goes on 100-mile motorcycle rides, hunts on weekends during deer season, performs regular household chores, does things with his 14 year old grandson who comes by on a daily basis, helped his brother cut shingles, and goes to Florida for about one month each year to see his mother. Another example is that he also initially testified he no longer played golf, stating that he had not played frequently for 20 years. When questioned further, he stated that his brother will get him out to golf, approximately once a month. An updated health form,

> completed by the claimant in September 2013, indicated that the claimant exercises at the gym or by golfing four to five days a week. He also alleged he only sleeps 3 hours a day, but he did not appear tired at the hearing, and elsewhere in the record, as previously mentioned, he was noted to sleep more than twice that amount.

ECF No. 7-2 at 44, 48-49; PageID.78-79 (citations omitted).  The ALJ's assessment of Plaintiff's pain and disabling symptoms is thorough and complete. The ALJ properly concluded that Plaintiff's allegations were inconsistent with the evidence for the abovementioned reasons. *See, e.g., Winslow*, 566 Fed. App'x at 422 (demonstrating that ALJ found claimant's alleged functional limitations not credible because it largely conflicted with credible, objective medical evidence).  For example, in his Function Report, Plaintiff admitted that he takes care of his personal hygiene, cooks, does the laundry, mows the lawn, drives a car, walks a couple miles, rides in a car, goes to stores as needed, pays bills and handles money in general, goes fishing, goes both bow and rifle hunting, plays in the pool, plays cards, gardens, and he can be around others.  ECF No. 7-6 at 15-20; PageID.259-264.  In addition, he testified that he can drive his motorcycle about a hundred miles at a time, go hunting seasonally, travel to Florida, cut shingles for roofs, and help take apart and put together cars. ECF No.  7-2 at 65-66, 69-70, 73, 75, 78-80; PageID.95-96, 99-100, 103, 105, 108-110.  This clearly contradicts Plaintiff's testimony that he watches television for eighteen to nineteen hours everyday, and that he does not do anything anymore.  ECF No. 7-7 at 66-67; PageID.96-97.  Overall, the ALJ's determination that Plaintiff was less than credible is supported by substantial evidence.  *See Kinsella*, 708 F.2d at 1059 (noting the Courts must affirm the ALJ's decision if it supported by substantial evidence).  Consequently, this Court affirms the ALJ's unfavorable credibility determination of Plaintiff.

Accordingly, the decision of the Commissioner is **AFFIRMED** and Plaintiff's

request for relief is **DENIED**.


Dated: 2/18/2016

                                           __/s/ *Timothy P. Greeley*_____
                                           HON. TIMOTHY P. GREELEY
                                           UNITED STATES MAGISTRATE JUDGE